# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| **vs.** | : **CRIMINAL NO.: 1:10-cr-320-0** |
| | : |
| **MATTHEW EVERETT GOULD** | : |

## MOTION TO TERMINATE SUPERVISED RELEASE

Now comes Matthew Everett Gould ("Gould"), through counsel, who files herewith his Motion to Terminate Supervised Release, showing to this Honorable Court the following:

1.

Gould plead guilty in this case to a one count criminal information charging him with Conspiracy to Possess with Intent to Distribute at Least 100 Kilograms of Marijuana in violation of 21 U.S.C. §§841(a)(1), 841(b)(1)(B)(vii) and 846.

2.

On October 25, 2010 Gould was sentenced to serve a term of thirty (30) months in prison followed by a term of four (4) years of Supervised Release.

3.

Gould served his prison sentence at FPC Montgomery from March 3, 2011 to May 15, 2012. While in prison, Gould successfully completed the 500 hour RDAP drug treatment program.  He also completed a National Federation of

Personal Trainers (NFPT) correspondence course and became certified as a personal trainer.  Gould also taught the GED mathematics class at FPC Montgomery, helping over forty (40) fellow inmates pass the math portion of their GED's.  Gould also had a spotless record at FPC Montgomery without a single disciplinary action against him.

4.

From May 15, 2012 to August, 2012, Gould was housed at Dismas House, a halfway house in Atlanta.  From August, 2012 to November 11, 2012, Gould was on home confinement at his parent's home in Atlanta. The total time served by Gould from March 3, 2011 to November 11, 2012 was twenty (20) months.

5.

During his time in Atlanta, Gould completed two online programming courses in three months.  Those courses were Introduction to Computer Science (with Python programming language), taught by David Evans, Professor of Computer Science at University of Virginia, and Web Development, taught by Steven Huffman, a noted Silicon Valley entrepreneur.  Gould also worked at the law offices of David R. Kam in Atlanta where he helped set up a short sale department.

6.

In January, 2013, Gould moved to the San Francisco area to take a job at Curebit (curebit.com), a marketing automation software company started by Allan Grant, a friend of Gould's who he met while he was a student at Georgia Tech. At the time of his prosecution in this case, Gould was a graduate student at Georgia Tech studying for his masters degree in economics. At Curebit, Gould works with customers to optimize their marketing programs on Curebit's software platform. Gould also analyzes data and works to improve the performance of Curebit's software. He also builds internal processes and help train new employees. Gould also wears other hats at Curebit as discussed in more detail below.

7.

Gould started out at Curebit as a low level unit tester making $1,500 a month part time. He was later promoted to a Junior Business Development position making a base salary of $60,000 a year. He was later promoted to his current position of Director of Analytics making a base salary of $80,000 a year. He hopes to be promoted to Head of Product by the end of 2014 at a salary of about $140,000 a year. He currently also has stock options amounting to 1% of the company.

8.

According to Gould, leading his team at Curebit in the development

processes for client software onboarding, internal training manuals, client feature requests, and reporting standards and analytics for the company's software has been extremely rewarding. He is very proud to have mapped out the fraud detection scheme Curebit uses, as well as of his role in the optimization of the product to increase user sharing, email marketing cascade to re-engage users, and the tracking program Curebit has installed to better help its clients understand their data.

9.

While Gould has advanced, the fact that he is on supervised release has negatively impacted on his ability to take advantage of opportunities within the company.  As a player in the global internet environment, Curebit operates internationally. Its development team is located in Kiev, Ukraine. That team's daily planned meetings for programmers occur at 2 a.m. PST. As the liaison between the business team and the development team, it would be extremely helpful for Gould to be able to visit the Ukraine office on a regular basis. Indeed, the owner of the company, Allan Grant, wants Gould to be able to travel to Kiev.  Please see the letter from Allan Grant, attached hereto as Exhibit "A".

10.

Examples of collaborative work that Gould could do with the development team in Kiev, Ukraine include participating in the planning sessions and weekly

4

report "updates" to the business team about product develpoment.  By being able to travel regularly to the office in Kiev, Gould would also be better able to pick up on nuances of development including problems, barriers and future contingencies, that are particularly difficult to detect remotely. Also, for corporate culture reasons, it would be good for Gould to be able to visit the Kiev office to establish personal relationships and to solidify the company's goals, beliefs and norms.

11.

In addition to the foregoing, the company wants Gould to be able to attend important conferences and pursue business opportunities for the company overseas. These activities are not reasonably doable while on supervised release. Curebit currently has several customers in Europe and Latin America. Expansion of this business is inhibited because Gould cannot easily and regularly travel to develop these and new relationships.

12.

18 U.S.C. §3583(e)(1) provides that this court may, after considering the factors set out in 18 U.S.C. §3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure

relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant and the interest of justice".

### 13.

Last year, a study of the early termination of supervision of low-risk offenders issued by the Administrative Office of the U.S. Courts concluded that the practice not only saves money, it does so without compromising public safety. The study showed that in fiscal 2012 early termination of the supervision of more than 7,000 offenders saved more than $7.7 million. (A copy of the study is attached hereto as Exhibit "B").

 Judge Robert Holmes Bell, Chair of the Judicial Conference Committee on Criminal Law, said of early termination that "[t]his practice promotes justice, conserves resources, and protects the public".  (A Memorandum from Judge Bell to all United States District Court Judges discussing, in part, early termination is attached hereto as Exhibit "C").

Early termination of low risk offenders allows federal districts to devote more resources to supervising and servicing offenders who are a greater risk to society. Criteria identified by the Judicial Conference to help identify offenders for early termination include stable community reintegration, progressive strides toward supervision objectives, no history of violence, no aggravated role in the

6

offense of conviction, no recent of alcohol or drug abuse, no psychiatric episodes, and no identifiable risk to public safety.

14.

Gould has been on supervised release since November, 2012.  As of May 9, 2014, he had served eighteen (18) months on supervised release.  As noted above, under the statute, he was eligible for consideration for early termination after the expiration of one year of supervised release.

15.

Undersigned counsel has contacted AUSA Jenny Turner, who prosecuted this case, and asked whether the government would agree not to oppose early termination for Mr. Gould.  Ms. Turner indicated that her office would let the Court know its position after this Motion was filed.

16.

Counsel has also been in touch with Gould's current probation officer in San Francisco, Aaron Tam.  Mr. Tam's email is Aaron_Tam@canp.uscourts.gov.  Mr. Tam's telephone number is (415) 436-7118.  Mr. Tam confirmed to counsel that Gould has not caused any problems while under his supervision.  Mr. Tam did express to Mr. Gould, but not to undersigned counsel, that he did not like the fact that Mr. Gould socialized with his co-defendant, Bradley Kam ("Kam"), after hours

of their work at Curebit.  We  respectfully point out that Kam and Gould are completely immersed in their work and that any "socializing" generally involves continual strategizing about the growth of the company.  Moreover, the impeccable success of Gould points away from the idea that his current association with Kam should be held against him.

Counsel asked Mr. Tam whether he would agree not to oppose early termination of supervised release.  Mr. Tam said he was going to talk to Gould and to people in his own office and get back to me on that request.

17.

We respectfully submit that Gould has done extremely well since he began his incarceration over three years ago. His accomplishments while in prison and after release while in the halfway house and under home confinement were remarkable.  He became a certified personal trainer, he taught math to other inmates, he completed the 500 hour RDAP program, he completed two online computer sciences courses, and he worked at a law firm.  He then moved to San Francisco where he has experienced a remarkable rise through he ranks of his employer, Curebit. Gould has also been a model probationer who has had no problems whatsoever while on supervised release.

18.

We respectfully submit that Gould poses no risk to society. On the contrary, he has completely turned his life around to become a highly successful and productive member of society. There is no indication that he has been abusing alcohol or drugs.  He has no history of violence. There was no aggravated role in the offense.  Moreover, as the court may recall, Gould cooperated fully with the government and accepted responsibility for his crime. In light of the foregoing we submit that Gould is exactly the type of successful, low-risk probationer that Judge Robert Holmes Bell was talking about when he encouraged district court judges to consider early termination of supervised release in appropriate cases.

Wherefore, for the foregoing reasons, we respectfully ask that this Court terminate Gould's supervised release in this case.

Respectfully submitted,

 s/Seth D. Kirschenbaum
Seth D. Kirschenbaum
Georgia Bar No.: 424025
Attorney for Matthew Gould

DAVIS, ZIPPERMAN, KIRSCHENBAUM & LOTITO
918 Ponce de Leon Ave., NE
Atlanta, GA 30306
(404) 688-2000   (404) 872-1622 Facsimile
seth@dzkl.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 21, 2014, I electronically filed the foregoing

Motion to Terminate Supervised Release with the Clerk of Court using the ECF

system which will send notification of such filing to the following: AUSA Jenny

Turner.

Respectfully submitted,

/s/ Seth D. Kirschenbaum
SETH D. KIRSCHENBAUM
Georgia Bar No.: 424025
Attorney for Matthew Gould

DAVIS, ZIPPERMAN, KIRSCHENBAUM & LOTITO, LLP
918 Ponce de Leon Ave., NE
Atlanta, GA 30306
(404) 688-2000   (404) 872-1622 Facsimile
seth@dzkl.com